**www.txs.uscourts.gov**

Appendix A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
_____ DIVISION

Shannie Lipsie

§
§
§

versus

§
§
§

Texas Stevedore,
Ceres Golf Inc, ILA Local 24
WGMA

§
§
§

CIVIL ACTION NO. _____

EMPLOYMENT DISCRIMINATION COMPLAINT

1.      This action is brought under Title VII of the Civil Rights Act of 1964 for employment

discrimination. Jurisdiction is conferred by Title 42 United States Code, Section § 2000e-5.

2.      The Plaintiff is:        Shannie Lipsie

        Address:                 9597 Jones Road #338

                                 Houston, Texas 77065

        County of Residence:     Harris

3.      The defendant is:        Please, See, attached

        Address:                 _____

                                 _____

☑       Check here if there are additional defendants. List them on a separate sheet of paper with

        their complete addresses.

4.      The plaintiff has attached to this complaint a copy of the charges filed on _____

with the Equal Opportunity Commission.

5.      On the date of July 23, 2019, the plaintiff received a Notice of Right to Sue

letter issued by the Equal Employment Opportunity Commission; a copy is attached.

**www.txs.uscourts.gov**

6.    Because of the plaintiff's:

(a)    ☐    race

(b)    ☐    color

(c)    ☑    sex

(d)    ☐    religion

(e)    ☐    national orgin,

the defendant has:

(a)    ☐    failed to employ the plaintiff

(b)    ☑    terminated the plaintiff's employment

(c)    ☐    failed to promote the plaintiff

(d)    ☑    other: Please See My EEOC Charge(s)

7.    When and how the defendant has discriminated against the plaintiff:

Please See My EEOC Charge(s)

8.    The plaintiff requests that the defendant be ordered:

(a)    ☑    to stop discriminating against the plaintiff

(b)    ☐    to employ the plaintiff

(c)    ☐    to re-employ the plaintiff

(d)    ☐    to promote the plaintiff

**www.txs.uscourts.gov**

(e) ☐ to _____

_____

_____ and that;

(f) ☑ the Court grant other relief, including injunctions, damages, costs and attorney's fees.

_Dhannie Lupaiq_
(Signature of Plaintiff)

Address: _9597 dones Road #338_

_Houston, TX 77065_

Telephone: _862-579-1570_

**www.txs.uscourts.gov**

Appendix B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
_____ DIVISION

Shannie Lipsie

§
§
versus                             §          CIVIL ACTION NO. _____
§
Texas Stevedore                    §
Ceres Gulf Inc, ILA-Local 24       §
WGMA                               §

ORIGINAL COMPLAINT

October 18, 2019

Re: Original Complaint

Dear Judge,

I am a woman with several disabilities, and I am asking you for a reasonable accommodation for writing my original complaint. I would like to use my former attorney demand letter, because it will tell you everything that you need to know.

Judge, this is what happened to me in detail, and I want to be reimbursed for all of my Psychiatrist visits because I pay out of pocket to see the Psychiatrist. I want to be reimbursed for my mileage for all doctor visits to my Primary Care Physician, Psychiatrist, and Psychologist as it relates to this case.

My former attorney, pretty much covered everything in my demand letter. I would like to use that as my original complaint, because I have a traumatic brain injury.

I have gone through so much with these companies, in addiction to what I have gone through in my personal life. I am a victim of rape by a former DARS counselor and a victim of assault by a Harris County Deputy. I moved out of my apartment under the VAWA, after the incident with the Harris County Deputy. I was homeless, for a year and three months because it was hard to find housing due to Hurricane Harvey. I am also a victim of Hurricane Harvey, and I had to be rescued water came up to my chest.

On October 2, 2019 at a Union meeting at ILA Local 24, after hearing that the Executive Board found a Mexican guy not guilty of hanging a hangsman noose inside of his truck I passed out. I

could not breathe and the policeman had to call for an ambulance and I was taken to the hospital. I had a bad anxiety attack is what EMS and the doctor at the hospital told me.

Judge, I am asking for a very large lump sum of money, and I am also providing letters from my Primary Care Physician, Psychiatrist, and Psychologist. I have called Adult Protective Services on myself, because I am still experiencing a lot of dizziness and fainting spells.

Judge, I am also providing pictures for you to look at. The pictures of me are:

- Bloody nose after I passed out at ILA Local 24

- My hair that has fallen out in the middle

- Stress patch, lower right corner, my hair will not grow at all

I am asking again, judge please accept this format for me, for reasonable accommodations.

Thank you,

Shannie Lipsie

Your Family's Health Coverage

| Policy Holder's Name | Insurance Company | Effective Date |
|---|---|---|
| | | |

## Resources

**VEHICLES:** We need to know about all the vehicles everyone, including tax dependents, pays for or owns. Such as:

-car    -truck    -boat    -motorcycle    -other

Update (If the facts about your resources have changed you must correct any wrong information).....................

| Name of Owner | Make / Model | Year | Money still owed on vehicle | Used for disabled person | Name of co-owner |
|---|---|---|---|---|---|
| Shannie Lynette Lipsie | Jeep Patriot | 2016 | 16000.00 | NO | |

**ITEMS EVERYONE PAYS FOR OR OWNS:** We need to know about all items everyone, including tax dependents, pays for or owns. Such as:

-cash    -bank accounts    -homes or other property    -insurance policies    -stocks

| Item | Value | Names on accounts or deeds (include co-owners) | Name of bank or business (to contact about item) | Address of bank or business (to contact about item) |
|---|---|---|---|---|
| Bank Account - Checking | 1.00 | Shannie Lynette Lipsie | Bank of America | |
| Cash | 0.00 | Shannie Lynette Lipsie | | |

Update/Add ...........................................................................................................................................................

| Item | Value | Names on accounts or deeds (include co-owners) | Name of bank or business (to contact about item) | Address of bank or business (to contact about item) |
|---|---|---|---|---|
| | | | | |

## Income

Update Income (If the facts about your income have changed you must correct any wrong information)..................

| Name | Name of Employer | Income Type | Amount |
|---|---|---|---|
| Shannie Lynette Lipsie | | RSDI | 854.00 |

More Facts about the People Included on this Form

| | Immigration Registration Number | Document Type |
|---|---|---|
| | | |





**TEXAS**
**Health and Human**
**Services**

TEXAS HEALTH AND HUMAN SERVICES COMMISSION
P O BOX 149027
AUSTIN, TEXAS 78714-9027

09/07/2019

Phone: 2-1-1
or for out of state callers,
call 1-877-541-7905

Case Number: 1000586481

MS. SHANNIE LYNETTE LIPSIE
APT 338
9597 JONES RD
HOUSTON TX 77065-4815

: is time to renew your Health Care Benefits
'ou now have **30 days** to renew your health-care benefits.

---

CTION REQUIRED: Check your renewal form -- make sure facts are correct.

| Program | Name | EDG Number |
|---------|------|------------|
| 1C – QMB | Shannie Lynette Lipsie | 541495082 |

ou need to check your renewal form. Look it over and make sure the facts we have about you are correct.
o find out how, see below -- "How to fill out or check your renewal form".

If some of the facts about you <u>are not correct</u>: You must update your renewal form.
If all the facts we have about you <u>are correct</u>: You need to only check your renewal form -- you don't need to send it back to us.



United States Courts
Southern District of Texas
F I L E D

OCT 18 2019

David J. Bradley, Clerk of Court



International
Longshoremen's
Association          est.
                    1983
Local 24

Steven Sanders | Secretary/
Treasurer
4060 Red Bluff Rd. Pasadena, TX
77503



713.923.4345

ssanders@ila24.org | www.ilalocal24.com

office

281.250.7440

cell



# KEN PAXTON
### ATTORNEY GENERAL OF TEXAS

March 21, 2019

Dear Ms. LIPSIE:

Your Address Confidentiality Program (ACP) application has been received and you have been registered as a program participant. Your registration is effective for three (3) years unless it is withdrawn, denied or cancelled before the expiration date.

Enclosed is your authorization card containing your substitute address and authorization number. Please be sure that all mail addressed to you at the substitute address includes the authorization number. Absence of this number will further delay delivery of your mail. Your name and address should appear as follows:

SHANNIE LIPSIE – ACP #VA190199

PO Box 12108 – MC 068

Austin, Texas 78711-2108

The substitute address can and may be used as your residence, work, and school address. The substitute address may be used when interacting with state and local agencies. The law requires most state and local agencies to accept your substitute address and not require you to disclose your actual residential address when presented with your authorization card. Your substitute address may also be used for personal first-class mail. Even though private companies are not required to accept the substitute address, many may be willing to use the address, so don't hesitate to ask. Mail received for you at the ACP office will be forwarded by first-class mail to the mailing address provided on your application. Please remember that the ACP does not forward packages (parcels), or mail that is not sent by first class. This could include prescriptions, packages, periodicals, junk mail, books or magazines.

As part of the application process, you designated the Office of the Attorney General (OAG) to act as agent to receive service of process and mail on your behalf. The ACP's receipt of your documents constitutes your receipt of those documents.

As a program participant, you are required to notify the ACP of a name change and/or change in your true residential address at least 10 business days before the date of the address change. A form to update this information is enclosed. Failure to notify the ACP of a change may result in your cancellation as a program participant.

If you have any questions about ACP, please call our offices at +1 512 936 1374. We look forward to serving you.

Sincerely,

Lidia Navarro Rodriguez
Address Confidentiality Program
Crime Victim Services Division

 **ROBINSON**
Law Group, PLLC

TERRENCE B. ROBINSON
MANAGING MEMBER
TROBINSON@TBROBINSONLAW.COM

BOARD CERTIFIED (LABOR AND EMPLOYMENT LAW)
TEXAS BOARD OF LEGAL SPECIALIZATION

MAIN LINE: (713) 568-1723
DIRECT LINE: (713) 568-1726
FACSIMILE: (713) 965-4288
WWW.TBROBINSONLAW.COM

## CONFIDENTIAL COMMUNICATION PURSUANT TO TRE/FRE RULE 408

September 26, 2019

**_Sent via Email: ehnelson@swbell.net_**
Mr. Eric H. Nelson
Attorney and Counselor
3303 Main, Suite 303
Houston, Texas 77002

**_Sent via Email: chelsea@WGMA.org_**
Ms. Chelsea Egmon
Vice President Labor Relations
West Gulf Maritime Association
1717 Turning Basin Drive, Suite 200
Houston, Texas 77029

**Re:    Shannie Lipsie**

Dear Mr. Nelson and Ms. Egmon:

As you may know, Ms. Shannie Lipsie ("Ms. Lipsie") retained this Firm to represent her legal interests and to investigate and pursue all remedies available to her in conjunction with the terms and conditions of her training by the West Gulf Maritime Association ("WGMA") and of the referral/hiring practices at International Longshoremen's Association Local No. 24 ("I.L.A."). WGMA has violated Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq, by failing to accommodate the limitations imposed by Ms. Lipsie's disabilities. Additionally, the I.L.A. has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C.A § 2000e-2(c)(2), as amended, 42 U.S.C. § 1981 ("Section 1981"), and the Texas Commission on Human Rights Act (TCHRA)(as codified in Chapter 21 of the Texas Labor Code) by engaging in sex and race discrimination.

The description of facts contained herein is not intended to be exhaustive and we hereby specifically reserve the right to supplement and/or modify the facts as further investigation dictates. Please understand that this letter has been prepared and sent for the sole purpose of encouraging settlement discussions. I, therefore, consider its contents and any related communications to be privileged and confidential. Please direct all future communications regarding Ms. Lipsie's legal claims referenced herein to my attention.

## Factual Background

Ms. Lipsie, a black/melanated female, initially began at the I.L.A. in 2011. Ms. Lipsie possesses a commercial driver's license and a Roll-On/Roll-Off ("RoRo") automatic transmission certification. Prior to obtaining her CDL, in 2006, Ms. Lipsie graduated from the University of Arkansas-Pulaski Technical College with an Associate Degree of Arts and an Associate Degree of Science. While attending the University of Arkansas – Puslaski Technical College, Ms. Lipsie was a Student Ambassador. The Student Ambassador program is a global program reserved for students who earned high grade point averages, who act as liaisons on behalf of their college or university. After graduation, Ms. Lipsie then went on to become a Certified Nursing Assistant in the home healthcare industry. In 2010, Ms. Lipsie decided that she wanted to go back to school and moved to the Houston area to attend the University of Houston, a Tier One university. While attending the University of Houston, Ms. Lipsie attained a high grade point average (3.6), while also working part-time as a legal assistant, and seeking referrals from the I.L.A. Because Ms. Lipsie proved to be a diligent worker, she consistently received referrals from I.L.A. foremen for jobs that were "in the hole" or aboard ships. However, during her senior year at the University of Houston, Ms. Lipsie decided to change career paths and pursue a career in commercial truck driving. Ms. Lipsie attained her commercial driver's license (CDL) through a smaller trucking school. However, in order to be a more appealing candidate for jobs, Ms. Lipsie decided to take a refresher commercial driving course at Houston Community College (HCC) and earn more driving hours. Ms. Lipsie then went on to work for different trucking companies.

Ms. Lipsie suffers from a traumatic brain injury that she sustained in 1992 (while she was in third grade), after she was struck by a vehicle. Because Ms. Lipsie sustained a physical injury to her brain, she has memory retention issues and problems concentrating stemming from Attention-Deficit/Hyperactivity Disorder ("ADHD") that was caused by the brain injury. Additionally, Ms. Lipsie, a survivor of sexual assault, suffers from Post-Traumatic Stress Disorder ("PTSD"). Due to Ms. Lipsie's traumatic brain injury, she received reasonable accommodations for the rest of elementary school and throughout junior high and high school. When Ms. Lipsie was finally able to return to elementary school after her injury, she was placed in special education classes and attended speech therapy sessions. While Ms. Lipsie attended junior high and high school, she was considered a 504 student—meaning she was a disabled student entitled to additional support and accommodations, which she received in the form of special classes and extended time for testing and turning in assignments. Though Ms. Lipsie is under the care of a medical doctor for her conditions and takes prescribed medications to help alleviate the symptoms, she still requires reasonable accommodations when undergoing training or taking tests. While attending the University of Arkansas – Pulaski Technical College and the University of Houston, Ms. Lipsie performed exceedingly well while receiving reasonable accommodations of extended time for testing and for turning in essays and having a notetaker, who was basically a student in each of Ms. Lipsie's classes that agreed to share their notes with her. Additionally, while taking the refresher commercial driving course at HCC, Ms. Lipsie was given the same reasonable accommodations she received at the University of Houston. Additionally, her HCC instructor would repeat instructions and go back over processes until Ms. Lipsie was fully able to grasp the concept.

In 2012, Ms. Lipsie was sexually harassed by another longshoreman, who asked Ms. Lipsie to engage in sexual intercourse with him, and when she refused, pinched her on her behind, and

tried to enter her car without permission during another incident. The same individual had already been previously counseled for taking photographs of other women's behinds. Thus, Ms. Lipsie filed grievances and charges with the EEOC regarding the sexual harassment. These incidents triggered Ms. Lipsie's PTSD, prompting her to temporarily leave the industry.

After Ms. Lipsie left the I.L.A., she went on to work for Southwest Airlines. While Ms. Lipsie went through the Ramp Agent training program for Southwest Airlines, Southwest Airlines accommodated her with additional time to take required exams, along with alternative methods of administering exams. Ms. Lipsie also received accommodations of extra time to observe others performing the Ramp Agent job duties, with repetitive training on the job duties, and access to printed instructional materials on how to perform the job duties.

In 2017, Ms. Lipsie decided to return to the I.L.A. However, she noticed that she was not receiving the consistent referrals she had previously received from foremen. Ms. Lipsie also noticed that foremen were treating her differently and considered her a "troublemaker" for previously filing grievances and charges with the EEOC regarding the sexual harassment she suffered through in 2012. I.L.A. foremen mainly only referred Ms. Lipsie for jobs unloading vehicles from cargo vessels. Thus, Ms. Lipsie sought further training and certifications from the WGMA. Ms. Lipsie took a RoRo manual transmission course through WGMA but was unsuccessful in passing the course. On April 2, 2019, Ms. Lipsie contacted I.L.A. Personnel Director, Carlos Lara ("Director Lara"). Ms. Lipsie informed Director Lara that she suffers from a traumatic brain injury and PTSD and requested reasonable accommodations when retaking the course. Ms. Lipsie stated that if she did not receive accommodations for taking the course, she would be forced to file a charge with the Equal Employment Opportunity Commission. Director Lara informed Ms. Lipsie to contact the WGMA Training Coordinator, Virginia Perez ("Coordinator Perez"), as she was in charge of training.

On April 25, 2019, Ms. Lipsie emailed Coordinator Perez, to inform her that she (Lipsie) had previously failed the RoRo manual transmission course, was signing up for the RoRo manual transmission course again, in addition to the Yard Tractor course. Ms. Lipsie requested reasonable accommodations for the courses and informed Coordinator Perez that she excelled at the University of Houston when she received reasonable accommodations and had attained her CDL through an HCC course in which she also received reasonable accommodations.

The next day, Coordinator Perez responded to Ms. Lipsie's email and asked Ms. Lipsie to specify the reasonable accommodations she requires for the courses. That same day, Ms. Lipsie responded and requested three specific reasonable accommodations for the courses. The first reasonable accommodation she requested was extended time for testing, including parallel parking and going up and down the ramp. Ms. Lipsie explained that she needs time to process the actual steps. Second, she requested one-on-one training or training in a smaller group. Last, Ms. Lipsie requested that she be allowed to get out of the vehicle (more than once) to see how to properly set up the vehicle for backing up while parallel parking. Ms. Lipsie also informed Coordinator Perez that the vehicle's manual transmission engine is very quiet, which caused her to stall out the vehicle while shifting gears and asked if Coordinator Perez had any suggestions.

Coordinator Perez responded that she or Chelsea Egmon would be in touch. Coordinator Perez then emailed again and asked Ms. Lipsie to specify her disabilities so that WGMA could "correctly provide reasonable accommodations." Ms. Lipsie immediately responded that she has

4 |

a traumatic brain injury that she sustained in 1992, after being struck by a moving vehicle, and as a result she has a learning disability, ADHD. Ms. Lipsie never heard back from Coordinator Perez regarding her request for reasonable accommodations. Though Ms. Lipsie was scheduled to take the RoRo manual transmission on April 29, 2019, because she never heard from Coordinator Perez, she decided not to take the course out of fear of failing the course again without being provided reasonable accommodations.

Months passed and Ms. Lipsie never heard back from Coordinator Perez, nor anyone else at the WGMA regarding her request for reasonable accommodations. Thus, the week of June 10, 2019, Ms. Lipsie attempted to take a WGMA sponsored forklift certification course without reasonable accommodations. Because WGMA did not provide Ms. Lipsie with the requested reasonable accommodations, she ultimately failed the course. While Ms. Lipsie was at the course, she called VP Bass regarding her request for reasonable accommodations. VP Bass informed Ms. Lipsie that she should have received training before she went to the course, that she could receive one-on-one training, and she needed an instructor that was more patient. (To this day, the I.L.A. and the WGMA have not offered Ms. Lipsie reasonable accommodations for training.) Because Ms. Lipsie failed the course and did not obtain her forklift certification, she became upset, and the situation worsened as she boarded a bus to leave. Ms. Lipsie was visibly distraught when another trainee began approaching and speaking to Ms. Lipsie in an abusive manner. Because Ms. Lipsie suffers from PTSD, when someone approaches her or speaks to her in an abusive or aggressive manner, she perceives that she is in grave danger. Thus, the PTSD caused Ms. Lipsie to go into a self-protect mode and verbally respond in any manner that might ward off her perceived attacker. Though Ms. Lipsie has no recollection of cursing or speaking in a raised tone to anyone on the bus, she acknowledges may have done so in order to protect herself from a perceived threat/attacker.

Early morning on June 24, 2019, Ms. Lipsie arrived at the I.L.A. hiring hall. At about 6:00 a.m., foreman, Earl D. Kelly ("Foreman Kelly") arrived on the floor to hire personnel for a Longshore-Orig On Dock ("Whip") position. When Foreman Kelly, who is in his eighties, reached Ms. Lipsie's section, she attempted to hand him her button. Foreman Kelly told Ms. Lipsie, "Nah, baby this work is not for you, this is automatic dogs." Foreman Kelly then told Ms. Lipsie that he was not going to hire her because she is a woman and the work is too hard for her. Foreman Kelly then looked specifically at Ms. Lipsie's nails and told her yet again that she could not do the job. Ms. Lipsie told Foreman Kelly that she could perform the job. Foreman Kelly walked past Ms. Lipsie and hired a casual worker, with no seniority, over Ms. Lipsie who has seniority.

Ms. Lipsie then went to the I.L.A. window to report the incident. I.L.A. 2nd Vice President Victor Bass ("VP Bass") and I.L.A. Vice President Jose "Chico" Trevino ("VP Trevino") were both at the window. Ms. Lipsie informed them that she wanted to file a grievance against Foreman Kelly. Ms. Lipsie explained that Foreman Kelly had discriminated against her by not hiring her for the Whip position, for which she was qualified, because she was a woman and he had hired a male with no seniority instead. VP Bass told Ms. Lipsie that Foreman Kelly had done nothing wrong and that he wanted someone that was forklift certified. VP Bass then tried to dissuade Ms. Lipsie from filing a grievance against Foreman Kelly.

Ms. Lipsie then spoke to VP Trevino about filing a grievance against Foreman Kelly. VP Trevino was not interested in assisting Ms. Lipsie with her grievance, so Ms. Lipsie then asked VP

Trevino for the grievance paperwork. VP Trevino responded that he did not know what paperwork she needed and directed her to Director Lara.

Ms. Lipsie then spoke with Director Lara about filing a grievance against Foreman Kelly. Director Lara provided her with the grievance paperwork and explained the process for filing the grievance. Director Lara also informed Ms. Lipsie that if she wanted the grievance heard by the executive board next month, she would have to turn it in within a day. In order to have her documentation compiled for the grievance hearing, Ms. Lipsie also asked Director Lara for the job descriptions for the hiring hall positions, but never received them from him.

On June 25, 2019, Ms. Lipsie requested to view the hiring hall footage from June 24, 2019. I.L.A. Recording Secretary Van Chatman ("Secretary Chatman") ignored her request. However, I.L.A. 3rd Vice President Brian Drumgo set up the video for her. While Ms. Lipsie was reviewing the video footage, Secretary Chatman remained hostile towards her. Secretary Chatman began speaking with a longshoreman while Ms. Lipsie was trying to watch the video. Ms. Lipsie asked Secretary Chatman if he could continue his conversation outside, because she could not concentrate on the video with her ADHD and their conversation. Secretary Chatman began yelling at Ms. Lipsie and called I.L.A. President Gabriel Garza ("President Garza"). President Garza told Ms. Lipsie over the phone that she had no rights to the video. Ms. Lipsie became fearful and left, deciding to avoid being further berated.

On June 28, 2109, Ms. Lipsie asked VP Trevino if she could finish reviewing the video. VP Trevino told Ms. Lipsie to wait as they were getting busy. Finally, I.L.A. Financial Treasurer Steven Sanders ("Treasurer Sanders") provided the video footage for Ms. Lipsie's viewing. Treasurer Sanders also provided Ms. Lipsie with the job descriptions she had previously requested from Director Lara.

Ms. Lipsie observed that the Whip job description for which Foreman Kelly was hiring/referring longshoremen, did not require a forklift certification and only required a HAZMAT certification, which Ms. Lipsie possessed. Thus, Ms. Lipsie's lacking the forklift certification could not have been the reason for which she was denied the Whip position.

Ms. Lipsie had also previously observed that union foremen routinely hired/referred Hispanic longshoremen, who were not forklift certified, for Whip positions. However, black longshoremen, including Ms. Lipsie, were required to be forklift certified to obtain referrals for Whip positions. When Ms. Lipsie brought the discrepancy to VP Trevino's attention, he just responded with "Yeah, I know." Thus, I.L.A. was aware of the disparate treatment between black and Hispanic longshoremen but did nothing to remedy it.

Legal Framework

**Disability Discrimination**

Under Title III of the ADA, "[a]ny person that offers examinations or courses related to applications, licensing, certification, or credentialing for…professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."42 U.S.C. § 12189. Thus, Title III of the ADA requires that entities offering licensing or certification examinations or courses provide

6 | . :

reasonable accommodations to disabled individuals. *Rush v. Nat'l Bd. of Med. Examiners*, 268 F. Supp. 2d 673, 678 (N.D.Tex. 2003). A person is disabled if, she has "a physical or mental impairment that substantially limits one or more major life activities of such individual". 42 U.S.C. § 12102(1)(A). The impairment must be one that substantially limits the ability of an individual "to perform a major life activity as compared to most people in the general population." 28 C.F.R. § 36.105(d)(1)(v). Major life activities include, but are not limited to, learning, reading, concentrating, and thinking. 42 U.S.C. § 12102(2)(A).

As WGMA is an entity that offers certification examination or courses for trade purposes, it is covered under Title III of the ADA, and must provide reasonable accommodations to disabled individuals. Ms. Lipsie suffers from traumatic brain injury and post-traumatic stress disorder. The regulations implementing the ADA and ADA Amendments Act of 2008, state that traumatic brain injury and post-traumatic stress disorder substantially limits brain function. 28 C.F.R. § 35.108(d)(2)(iii)(K). Some of the brain functions limited by Ms. Lipsie's brain injury include memory retention and processing information. Thus, Ms. Lipsie is a disabled individual under the ADA.

On April 25, 2019, Ms. Lipsie emailed Coordinator Perez stating that she has several disabilities and is requesting accommodations for courses as she previously failed the RoRo manual transmission course. Ms. Lipsie explained that while she was undergoing training at HCC to attain her CDL, HCC afforded her accommodations as did the University of Houston. Coordinator Perez responded the next day, on April 26, 2019, and asked Ms. Lipsie to specify the accommodations she needed. Ms. Lipsie promptly responded that she needed extended time for testing as she needs time to process the actual steps, training in a smaller group, and to be allowed to get out of a vehicle multiple times for parallel parking. Coordinator Perez then asked Ms. Lipsie to specify her disabilities. Ms. Lipsie immediately responded that she has a "traumatic brain injury that [she] got in 1992" and as a result she also has a learning disability, ADHD. However, Ms. Lipsie never heard back from Coordinator Perez or anyone else at WGMA regarding her request for reasonable accommodations. Because WGMA failed to reasonably accommodate the · limitations of Ms. Lipsie's disabilities, the week of June 10, 2019, Ms. Lipsie was forced to take a forklift certification course without reasonable accommodations, which she failed.

In *Rush*, the court held that the plaintiff was entitled to an injunction requiring the National Board of Medical Examiners to allow him extra time on a licensing examination, where the court found that he suffered from a disability that substantially limited his ability to learn and had a history of receiving accommodations. Specifically, the court found that the plaintiff had a history of formal and informal accommodations related to test taking throughout middle school, high school, college, and graduate levels. As Ms. Lipsie is disabled under the ADA and previously received reasonable accommodations for the remainder of elementary school, throughout junior high school, high school, and college, during the HCC CDL refresher course and Ramp Agent training program with Southwest Airlines, in the forms of special classes, extended time for tests and assignments, notetakers, and repetitive instruction, she would be entitled to a preliminary injunction requiring WGMA to provide her with the reasonable accommodations she requested. See *Rush*, 268 F. Supp. 2d at 674, 679; *compare with Glueck v. Nat'l Conference of Bar Examiners*, No. SA-17-CV-451-XR, 2018 WL 3977891, at *6 (W.D.Tex. August 20, 2018) (Plaintiff's failure to accommodate claim under Title III of the ADA against the National Conference of Bar Examiners was dismissed where the court found that the plaintiff was not disabled under the ADA

7 |

and that he had succeeded in college and took the SAT, ACT, and LSAT without accommodations and scored in the average range.).

*Sex and Race Discrimination*

Under Title VII, it is unlawful for a labor organization to " classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual or employment opportunities or otherwise adversely affect [her] status as an employee or an applicant for employment, because of such individual's race, color, religion, sex, or national origin". 42 U.S.C. § 2000e-2(c)(2). Title VII defines labor organization as "a labor organization engaged in an industry affecting commerce, and any agent of such an organization...which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization." 42 U.S.C. § 2000e(d). A labor organization is engaged in an industry affecting commerce if "it maintains or operates a hiring hall or hiring office which procures employees for an employer or procures for employees opportunities to work for an employer." 42 U.S.C. § 2000e(e).

The I.L.A. is a labor organization under Title VII as it deals with employers concerning grievances, labor disputes, wages, hours, and terms and conditions of employment, and is subordinate to a national and international labor organization. Additionally, the I.L.A is engaged in an industry affecting commerce as it maintains or operates a hiring hall.

To establish a prima facie case of sex or race discrimination, in a failure-to-refer situation, a plaintiff must show: (1) she was a member of a group protected by Title VII; (2) she was qualified and requested referral for a job for which the union was referring applicants; (3) despite her qualifications, she was not referred; and (4) after her nonreferral, the union continued to refer applicants with plaintiff's qualifications for available positions. *See Mills v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 634 F.2d 282, 284-285 (5th Cir. 1981); 42 U.S.C. § 1981; 42 U.S.C. § 2000e-2(c)(2); Tex. Lab. Code § 21.001 (explaining how TCHRA executes the policies of Title VII and its amendments).

Ms. Lipsie can establish a case of sex discrimination through direct evidence, based upon Foreman Kelly's comments to her when he failed to refer her for the Whip position. First, as a female, Ms. Lipsie is a member of a protected class under Title VII. Second, she was qualified for the Whip position as it only required a "HAZMAT" certification, which Ms. Lipsie possesses. Also, Ms. Lipsie specifically requested a referral from Foreman Kelly regarding the Whip position and repeatedly told him that she could do the job. Third, despite being qualified for the Whip position, Foreman Kelly specifically told Ms. Lipsie that she could not do the job and it would be too hard for her because she is a woman and denied her the referral. Fourth, Foreman Kelly referred a male for the Whip position who has no seniority, rather than Ms. Lipsie who has a seniority position one[1], in violation of Section 4 of the Hiring Hall Procedure and Standing Rules ("Rules") of the I.L.A. Local No. 24. *See Mills*, 634 F.2d at 285 (The court found that the female plaintiff established a prima facie case of sex discrimination against a labor organization in which the

---

[1] Ms. Lipsie would have a higher seniority position, if the I.L.A. abided by Section 8 of its Rules regarding seniority allowances for disabilities.

8 |

evidence showed that a number of men placed on the out-of-work list after the plaintiff, were referred for positions before the plaintiff.).

Though Ms. Lipsie can establish a sex discrimination claim through direct evidence of Foreman Kelly's discriminatory comments, assuming arguendo, a court subjects her claims to the McDonnell Douglas burden-shifting framework,[2] she would not only be able to prove sex discrimination, but also race discrimination. Since Ms. Lipsie established a prima facie case of sex discrimination, the burden shifts to the I.L.A. to articulate a legitimate non-discriminatory reason for Foreman Kelly denying her a referral for the Whip position. *See Burrell*, 482 F.3d at 411. I.L.A. VP Bass claimed that Ms. Lipsie was not hired for the Whip position because she was not forklift certified. The burden then shifts to Ms. Lipsie to show that either I.L.A.'s reason is pretext or that I.L.A.'s reason while true is only one of the reasons for its conduct and another factor is plaintiff's protected characteristic. *See id.* at 412. Ms. Lipsie can show that I.L.A.'s reason, that she was not referred for the Whip position because she is not forklift certified is false as the Whip job description did not require a forklift certification and other longshoremen, specifically Hispanics, who were not forklift certified had been referred for the Whip positions. Ms. Lipsie can then establish a prima facie case for race discrimination, as well. First, as a black/melanated individual, Ms. Lipsie is a member of a protected group under Title VII. Second, as explained above she was qualified and had requested referral for the Whip position. Ms. Lipsie also knew of other black/melanated individuals who were also qualified and requested referrals for Whip positions. Third, I.L.A. foremen denied Ms. Lipsie and other black/melanated individuals referrals for Whip positions because they were not forklift certified. Fourth, Hispanic longshoremen, who were also not forklift certified were referred for Whip positions and thus, treated more favorably by the I.L.A. Ms. Lipsie can establish that the I.L.A. discriminated against her on the basis of her sex and race.

## Resolution

The purpose of this letter is to inform you of our client's amenability in resolving this matter prior to engaging in additional costly and time-consuming litigation. Working out an amicable solution will benefit WGMA and I.L.A. as well. As you are aware, the claims asserted by Ms. Lipsie allow plaintiffs to recover attorneys' fees, back pay, front pay, benefits, compensatory damages, and punitive damages. As these types of lawsuits can incur hundreds of thousands of dollars in attorneys' fees, WGMA's and I.L.A.'s defense of this matter could easily cost it $100,000 in attorneys' fees alone. However, if WGMA and I.L.A. wish to discuss resolution options at this stage, prior to incurring costly attorneys' fees, my client is willing to engage those discussions.

*[handwritten margin note: Wish to File ing Federal Lawsuit]*

Ultimately, if a satisfactory resolution of this matter cannot be reached, our client intends to pursue all available claims arising out of WGMA's ADA violations and I.L.A.'s employment law violations, including, pursuing litigation in federal or state court—to seek all available damages. In this regard, a thorough investigation into WGMA's compliance with the ADA and the employment practices of the I.L.A. will be conducted in order to determine if other violations have occurred with other longshoremen, past and present.

---

[2] A plaintiff can prove intentional discrimination through direct evidence or circumstantial evidence. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). If a plaintiff offers circumstantial evidence, the McDonnell Douglas framework requires that the plaintiff establish a prima facie case of discrimination, then the employer must produce a legitimate nondiscriminatory reason for the adverse employment decision. *Id.*

9 |

We look forward to hearing from you in response to this letter to discuss available remedies and options for resolution. If we receive no response within ten (10) days from the date of this letter, we will conclude that no attempt to enter into settlement negotiations is desired by the WGMA and the I.L.A. prior to litigation, and all legal remedies will be vigorously pursued by our client.

Thank you for your attention to this matter.

Very truly yours,

By: _____

Terrence B. Robinson